(86 App. Div. 226.)

## DONNELLY v. BURNHAM et al.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. LIFE INSURANCE—CHANGE OF BENEFICIARY—BY-LAWS OF ORDER—CONSTRUCTION.

By-law of a life association relating to change of beneficiaries, which required the secretary of the local branch to "attach his signature as a witness and the seal of the branch," did not require the secretary to actually see the signing of the application for the change.

2. SAME—DEATH OF DECEASED BEFORE COMPLETION OF CHANGE—EFFECT.

Where deceased prior to his death had done all that was in his power to effect a change in the beneficiary named in his certificate, and all that remained to be done by the association after his death (i e., the issuing of a new certificate, etc.) was merely formal, the death of deceased did not prevent the change of beneficiary taking effect.

Appeal from Trial Term, Cattaraugus County.

Action by Margaret Donnelly, by guardian, etc., against Mary Burnham, impleaded, etc. From a judgment in favor of plaintiff, and from an order denying a new trial, the defendant impleaded appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Eugene W. Harrington, for appellant.

Thomas H. Dowd, for respondent.

WILLIAMS, J. The judgment and order should be affirmed, with costs. The action as tried involved the ownership of $1,000 insurance money, which the defendant association had paid into court to await the determination of the question of such ownership. The action was tried before the court, a single question as to the facts having been submitted to a jury, and a finding thereon made. The facts were thus settled, and are not in dispute here. Briefly, they are as follows: July 20, 1899, the deceased became a member of Branch No. 44 of this defendant association, located at Salamanca, N. Y., and the association issued to him a certificate or policy of insurance for $2,000, the defendant Mary Burnham, deceased's sister, being named as beneficiary. The deceased died April 29, 1902, while a member in good standing, and his real beneficiary was entitled to the $2,000. January 28, 1901, the deceased married plaintiff's mother, Mary, and thereafter, and November 19, 1901, plaintiff was born of that marriage. Just prior to the death of deceased he made an effort to change the beneficiary in the certificate or policy so as to make $1,000 payable to his wife, and the other $1,000 to his daughter, and the question is whether he accomplished that purpose or failed. Deceased was taken sick on Wednesday, April 23, 1902, and died on the following Tuesday, April 29. His wife took care of him until Sunday, when a nurse was called, Mr. Smith, and was also with him until he died. Deceased kept a store, and lived across the street with his wife and child. On Thursday he directed his clerk, Stillman, to get the certificate from his papers at the store, and have the beneficiary changed, as above indicated. Stillman found the certificate at the store, brought it to

the deceased's room, and laid it on his dresser. Mr. Dowd, a lawyer, was there with deceased, and Stillman evidently assumed Mr. Dowd would attend to the matter. Nothing was done about it, however, until Tuesday, the day deceased died. About 8 o'clock in the morning of that day deceased and Stillman again talked about the matter, and deceased told Stillman to attend to it right away. Stillman took the certificate to the store, properly filled out the blank on its back for the purpose of accomplishing the change of beneficiary as directed, and signed deceased's name to it. He then took the paper to Mr. Sherry, the president of Branch 44. Sherry told him that deceased would have personally to sign the paper on the back of the certificate. Stillman then went back to the store, erased his own signing of deceased's name, and took the paper back to deceased's room. The nurse, Mr. Smith, and deceased's wife and sister were present, and there deceased signed his name to the paper indorsed on the certificate. This was about 10 o'clock in the morning. At about 11:30 the same morning, Stillman delivered the certificate and indorsement to Mr. Sherry. About 12:10 o'clock, the same afternoon, Sherry, president, and Gerber, secretary, of Branch 44, went to the lodge room. Gerber put his name as a witness to the indorsement signed by deceased, and affixed the seal of the branch to it, and handed the certificate and indorsement to Sherry, and at 5:25 o'clock the same afternoon Sherry delivered the same to Mr. Kelly, one of the grand trustees of the defendant association. Mr. Kelly wrote a letter to Mr. Cameron, supreme recorder of the association, inclosed the certificate and indorsement, duly attested and sealed, and mailed the same about 5:25 o'clock the same afternoon to him at Hornellsville, where he resided. Deceased died at 7:25 o'clock the same evening. The letter and certificate, with indorsement, were received by Mr. Cameron the next morning, April 30, 1902, at 9:10 o'clock, and he at once issued a new certificate, naming the new beneficiaries as indicated in the paper signed by the deceased. Gerber, the secretary of Branch 44, did not in fact see the deceased's signature made to the indorsement on the back of the certificate. The grand secretary of defendant association for the state of New York was a Mr. Ryan, of Syracuse, N. Y. The certificate and indorsement signed by deceased were not sent to such grand secretary. The court, upon these facts, found that the beneficiary was properly changed, and that the wife and daughter of deceased were entitled to the insurance money, and the plaintiff had judgment for her $1,000.

The defendant association was subject to article 7, c. 690, Laws, 1892, and section 238 of such article provided:

"Membership in any such society, order or association, shall give to the member, the right at any time, upon the consent of such society, order or association, in the manner and form prescribed by its by-laws, to make a change in its payee or payees, beneficiary or beneficiaries, without requiring the consent of such payees or beneficiaries."

And the association provided by title 1, § 5, of its by-laws:

"A member may at any time change, alter, or amend the designation of person or persons to whom the benefits named in his certificate are payable by surrendering said certificate, after having filled, or caused to be filled, the

blank which shall be provided for that purpose, on the back of the same, providing for new designation, and attaching his signature to it. The secretary of his branch shall attach his signature as witness, and the seal of his branch, and forward it to the grand secretary, if in his immediate jurisdiction. Upon the receipt of the same by the supreme recorder, he shall issue a new certificate in accordance with such change of designation."

It appears that the supreme council is the controlling body of the whole association, and the supreme recorder is its officer; that the grand council has jurisdiction over the branches in any one state, and the grand secretary is its officer; that when the grand secretary receives an application for a change of beneficiaries he has no duty to perform with reference to it, except to pass it over to the supreme recorder; that these applications are received in the usual course of business of the association, not only from the grand secretary, but from other sources, even from the insured direct; and in either case the supreme recorder issued the new certificate as requested. The section of the by-laws above quoted does not require that the branch secretary shall actually see the signing of the application, but that he shall attach his name as a witness to the paper, and also the seal of the branch. There is to be this proof on the face of the paper that it has passed through the hands of the branch officer. The branch has no real duty to perform except to see that it comes from the insured, and to pass it along to the superior governing power of the association.

It will be seen, therefore, that the deceased had in this case done all that was in his power, before he died, to make this change in the beneficiaries under his certificate. The association had no reason for refusing the new certificate, and no interest in so refusing—no discretion in the matter. Its action in receiving the application and issuing the new certificate was merely formal, and related back to the time when the application was delivered to the secretary of the branch of the association. The by-laws of the association provided for nothing to be done by the deceased after the delivery to the branch secretary. Everything to be done thereafter was to be done by the association, and its officers and agents, in the formal steps necessary to carry out and complete the change made by the deceased. Under this condition of things, the court properly held that a change of beneficiaries had been properly effected. Luhrs v. Luhrs, 123 N. Y. 367, 25 N. E. 388, 9 L. R. A. 534, 50 Am. St. Rep. 754, approved in Thomas v. Thomas, 131 N. Y. 205, 30 N. E. 61, 27 Am. St. Rep. 582; Fink v. Fink, 171 N. Y. 624, 64 N. E. 506; Lahey v. Lahey, 174 N. Y. 146, 66 N. E. 670.

In the Luhrs Case it was provided by the constitution of the organization that the change in the beneficiary might be made by surrendering to the lodge of the insured his certificate, to be forwarded to the supreme lodge, which was thereupon required to cancel the original certificate, and issue a new one in lieu thereof. The insured surrendered his certificate to his lodge, with directions for the issue of a new certificate, naming a new beneficiary. It was mailed to the supreme lodge, and on the same day it was mailed the insured died. The old certificate and the request were received two days later at the home office, formally canceled, and the new certificate

issued. It was held that as the insured had done all that was required of him in order to effectuate his intent to change the beneficiary, and all that remained to be done was purely formal, in the doing of which the supreme lodge had no discretion, the old certificate was to be regarded as canceled when it was properly surrendered to the branch lodge, the authorized agent of the association, that the death of the insured did not operate to prevent the consummation of the surrender, and that the subsequent issuing of the new certificate, as directed, should be held to relate back to the time of the surrender.

The only possible distinction there can be found between that case and this one is that in that case the provision made by the association was that the old certificate, with request for the change of beneficiaries, should be surrendered to the local lodge, to be forwarded to the supreme lodge, for cancellation, etc., while here the provision of the by-law is that, the insured having made the request upon the blank on the back of the certificate, the secretary of the branch shall attach his name as a witness and the seal of the branch, and forward it to the grand secretary. The branch secretary could not attach his name and seal, and forward the paper, unless the insured delivered the paper, with the request indorsed, to him. So that, in effect, the provision here is the same as in the Luhr case. Every other fact upon which the court relied for its decision in that case is to be found in this case. That decision is applicable to and should control us in the disposition of this case. There is nothing in the Thomas or Fink cases that is in conflict with this disposition. In the Thomas Case there was no effort made to surrender the old certificate or procure a new one to be issued. The insured merely changed the original certificate himself, and kept it till his death. The court in its opinion clearly distinguished that case from the Luhrs Case.

In the Fink Case the insured was required to surrender the old certificate to the company, request a new one changing the beneficiary, and pay a fee of 25 cents. The insured wrote to a collector of the company, and to the secretary of the company, inclosing the 25 cents, and asking for a new certificate, changing the beneficiary. (Apparently he did not have and could not get the old certificate.) The collector had no authority in the premises, and neither letter by the insured reached the company itself until after the insured died. The court upon these facts held there was no change of the beneficiary. The distinction between that case and this one will be readily perceived. The Court of Appeals in its opinion pointed out the distinction between that case and the Luhrs Case, among other things saying: "In that (Luhr's) Case everything had been done that the member could do, while in this (Fink) he had really done nothing, as his attempt to reach the company was a failure."

In the Lahey Case it was held that the application for a change of beneficiaries could be effected without the actual surrender of the old certificate, where it was wrongfully withheld from insured by the original beneficiary. The Luhrs, Thomas, and Fink Cases were all referred to and distinguished in the Lahey Case, and the rule laid down in the Luhrs Case was left undisturbed.

Further discussion of the principles of law involved here and relied upon by the trial court in making its decision might be had, but appears to be unnecessary. The decision is supported by authority, and has led to the doing of substantial justice here. The deceased's wife and infant child should have this insurance. The sister before the death of deceased said she would not touch any of this insurance money if the change of beneficiaries was not effected in time, but as soon as death occurred she made haste to claim the whole fund.

The judgment and order should be affirmed, with costs. All concur.