NAVASSA GUANO CO. v. COCKFIELD et al.

(District Court, E. D. South Carolina. July 23, 1917.)

1. INSURANCE ⊙=587—LIFE INSURANCE—CHANGE OF BENEFICIARY.

  In a life insurance policy providing that the insured may at any time while it is in force change the beneficiary by written notice to the company, a provision that the change shall take effect only upon its indorsement on the policy is for the protection of the company, and where the policy prescribes no particular form of notice, a sufficient written notice will be deemed by a court of equity to have become effective on its receipt by the company.

2. EXEMPTIONS ⊙=50(1)—INSOLVENT ESTATES—REMEDIES OF CREDITORS—LIFE INSURANCE—PREMIUMS PAID.

  Premiums paid by the insured on a life policy not payable to his estate when insolvent on his death while still insolvent are recoverable out of the proceeds of the policy for the benefit of his creditors, but the remainder of the proceeds are not subject to the claims of creditors.

In Equity. Suit by the Navassa Guano Company against Ellen Nixon Cockfield and George Dickson, as executors of the will of S. R. Cockfield, deceased, Reamer L. Cockfield, and the Volunteer State Life Insurance Company. Decree for complainant in part.

---

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Philip H. Arrowsmith, of Lake City, S. C., and Willcox & Willcox, of Florence, S. C., for complainant.

Le Roy Lee, of Kingstree, S. C., for defendants executors.

Kelley & Hinds, of Kingstree, S. C., for defendant Reamer L. Cockfield.

Miller & Miller, of Chattanooga, Tenn., for defendant Volunteer State Life Ins. Co.

SMITH, District Judge. The bill of complaint in this case was filed on the 30th of March, 1917. All parties defendant have been duly served with process and have appeared and answered. The cause, being at issue, came on to be heard. The testimony has been taken, and counsel for all parties interested have been heard. The facts of the case appear to be that one S. R. Cockfield on the 5th February, 1916, took out a policy of insurance in the Volunteer State Life Insurance Company for $6,000, for which he was to pay the annual premium of $185.70. The policy was payable unto the executors, administrators, or assigns of the insured, and contained a provision that the insured might at any time while the policy was in force by written notice to the company at its home office change the beneficiary or beneficiaries under the policy, such change to take effect only upon the indorsement of the same on the policy by the company. The first premium of $185.70 was paid by S. R. Cockfield, and the next premium which became due on February 5, 1917, was also paid by him. From the evidence it appears that during the year 1916 S. R. Cockfield became indebted to the plaintiff, the Navassa Guano Company, herein, and also to a large number of other creditors, and was on the 5th day of February, 1917, when the second premium became due and was paid, wholly insolvent. Subsequent to the payment of the premium, a few days later only, that is to say, on the 9th day of February, 1917, S. R. Cockfield became very ill, and from that time was confined to his bed, his illness increasing in its desperate character until the 16th day of February, 1917, when he died. Prior to his death he had executed a change of beneficiary under the policy by a written notice to the company at its home office. On the 13th of February, 1917, three days before the death of S. R. Cockfield, the Volunteer State Life Insurance Company received from S. R. Cockfield a written notice inclosing his policy and notifying them to change the beneficiary and make the policy payable to Reamer L. Cockfield, related to him as brother. On the next day, the 14th, the company seems to have answered him acknowledging the receipt of his notice, but requesting him to make the change upon certain printed forms of the company, which were inclosed to him for that purpose. This notice to the company of the change of beneficiary bears the date of February 9th. Whether or not it was really executed on February 9th from the testimony appears to be doubtful. If it had been executed on the 9th and mailed the same day, it should have been received by the company before the 13th, but at any rate the weight of the testimony satisfies the court that whenever it was executed S. R. Cockfield had reason to believe that his disease was most likely to have but one termination—that is, death. The complainant now has brought this bill to subject the proceeds of this insurance policy, which the insurance com-

pany admits to be due and payable, to the party who may be lawfully entitled, to the payment of the creditors of S. R. Cockfield, upon the ground: First, that the transfer was invalid, null, and void as to creditors; and, next, that in any event the transfer was insufficiently executed, so as to pass the title of the policy, and it still remains the property of the estate of S. R. Cockfield, and should be administered as such and applied to the payment of his creditors.

[1] With regard to the last ground, that the transfer was insufficiently executed, the objection appears to be not well taken. The provision in the policy requiring or stipulating that the change of beneficiary should only take effect upon the indorsement of the change upon the policy by the company was intended for the benefit and protection of the company. The stipulation in the policy is that the insured may at any time while the policy is in force by written notice to the company at its home office change the beneficiary or beneficiaries under the policy. The policy mentions or requires no form or specific form for this notice; it simply requires written notice. This stipulation had been duly complied with by S. R. Cockfield, who had given written notice to the company of the change of beneficiary, and the company had received it. It was the duty of the company upon its receipt at once to indorse the change of beneficiary on the policy. Their delay in so doing was due to their desire to have the notice of change of beneficiary made a little more formal upon the blanks customarily used by it. This may have been a convenience to the company, but was no part of the contract, and as a court of equity in such cases as this would hold that to have been done which ought to have been done, it will now hold that the change of beneficiary was, so far as this stipulation in the policy was concerned, sufficiently made as against all third parties, as against whom, if the question depended upon this alone, the defendant Reamer L. Cockfield would be entitled to hold the policy and its proceeds.

[2] The next question, however, is more far-reaching. That is as to the right of an insolvent party to divert from his estate funds which ought to go to the payment of his creditors sufficient to pay the premium upon insurance which he proceeds to donate to his relations or other persons. This court in its decree filed December 23, 1916, in the case of Harriman National Bank v. Huiet, 244 Fed. 216, has adverted to the shock that it is likely to occasion to equitable sensibilities when a person dies heavily indebted or totally insolvent as to his creditors, many of whom may stand in the position of creditors who have been misled and deceived by the statements of the deceased in procuring loans; and the creditors then go unpaid, whilst the wife and children or other relatives of the deceased are amply provided for from the proceeds of life insurance policies procured and their premiums paid for by the deceased out of funds procured by him from these very creditors. The change of beneficiary in this case to his brother from the testimony appears to have been wholly without valuable consideration, in the sense of financially valuable consideration. Whatever good considerations might attach to it, it was not a consideration which as against creditors would be recognized as valuable. As against them it was a pure donation. There does not appear any testimony in the case

fr m which an inference may be drawn of any direct fraud intended of any criminal character. The invalidity of the transfer to his brother and the change of the beneficiary by appointing the brother such, if invalid, must be so upon the ground that in equity it is a fraud against creditors for a person indebted to make a voluntary donation of his property. By the law of the state of South Carolina the rule is that slight indebtedness such as for current expenses for a family or debts inconsiderable to the value of the donor's estate will not generally avoid a voluntary conveyance, but subject to this qualification it seems to be a settled rule of law that one who is in debt cannot make a voluntary conveyance which will prevail against his existing debts. This was so decided by this court in its decree filed February 25, 1916, in the case of Lane v. Hursey, and confirmed by the Circuit Court of Appeals for the Fourth Circuit by its decison filed on the 14th of December, 1916, in the case of Hursey v. Lane, 238 Fed. 913, —— C. C. A. ——. Under the facts of this case S. R. Cockfield, having been wholly insolvent at the time, was incapable of making such a donation as that of the amount involved in this insurance policy without consideration to his brother. But an insurance policy is a peculiar kind of property. It may represent value or it may not. It is simply a promise of the insurance company to pay upon the death of the insured. Unless it has a cash value, there would be nothing upon which any process of the court could go so as to convert it into money and subject that money to the payment of creditors. Under the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 544) there is statutory recognition of this position of an insurance policy, for section 70, subd. "a," of the Bankrupt Act (Comp. St. 1916, § 9654) provides that, when any bankrupt has any insurance policy which has a cash surrender value payable to himself, his estate, or personal representative, he may within 30 days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy, free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets. Several decisions have been made that, where an insurance policy on the life of a bankrupt has no cash surrender value, it does not pass to the trustee by operation of law as assets of the bankrupt estate. This present proceeding is in equity. The question before the court is whether under the principles administered in a court of equity the transfer is valid, and this section of the Bankrupt Act is pertinent only as showing a legislative recognition of the character of property of a life insurance policy. The transaction is to be considered as of the character and value of the property at the date of the transaction. S. R. Cockfield died, and upon his death the policy had an instant large value. If, contrary to his expectation, he had lived, the possession of the policy might have been a liability, and not an asset; for it is admitted that it had no cash surrender value. There are two strong arguments pro and con in this matter. The one in favor of the transfer is that a man usually takes out insurance to protect some one to whom he has moral or natural duties, and to protect them from the risks of busi-

ness. Now, if the rule were that in cases of financial disaster this insurance became the property of his creditors because it was originally payable to his estate, or in fact any policy of insurance taken out by him while insolvent, no matter who is named as a beneficiary, became the property of his creditors, what then would be the utility to a man of taking out insurance? The payment of every annual premium in most policies is a renewal of the policy. A man can take out a policy of insurance for the benefit of his wife while solvent, and then become insolvent and continue so for a number of years, say four or five, each year renewing the policy by the payment of the annual premium. Now, if he held his property only as trustee for his creditors when he was insolvent, and any investment or diversion from the fund was for their benefit, then, whilst he may have been paying for four or five years under the impression that he was doing it for the protection of his wife, he would really have been simply carrying the policy for his creditors, which would lead to a practical nullification of the main motives which induce men to take out insurance for the benefit of others to whom they have natural ties. On the other hand, the general rule is that, where an insolvent party diverts his assets to the acquisition of other property, he is treated as acquiring it for the benefit of his creditors, viz. if an insolvent man took $1,000 out of his assets and bought a piece of land for $1,000, and had the land placed in the name of his wife, that transfer would be set aside as being invalid and in fraud of creditors, and the wife would be decreed to hold the property simply in trust for the creditors. The same thing would be the case even if he pursued the circumlocution of taking the $1,000 and first investing it in property in his own name and then transferring that property directly to his wife. The test would be, Was he insolvent at the time of his transfer? or, Was he indebted and making a voluntary donation which will be treated as in fraud of his creditors? If so, then the usual decree of the court would be that the transfer be set aside and the whole property be assets of his estate for the payment of his creditors, and not simply the amount he expended in its acquisition. On the other hand, it may be said the true rule would seem to be (especially in the case of an insurance policy) that a man should not be allowed to divert assets which belong properly to his creditors for the acquisition of property for or to make gifts to others. Any premium that he pays to purchase insurance would reasonably and logically therefore be returned to his estate, with interest; but why should the uncertain speculative value, which depends upon his death, of the difference between the premium and the face of the policy, be paid to his estate? The policy had no present surrender value. It was a wholly speculative and uncertain asset; it could never have been subjected by the creditors by any process to the payment of their claims while he was alive, and its donation was not a donation of anything of value at the time for the payment of his creditors that they could have subjected to the payment of their debts. There is a consideration that a man must not speculate with the funds of another taking the chance if he succeeds of making a large profit and of being compelled to return only the amount he unlawfully diverted, and not his gains. If an express trustee unlawfully makes speculative invest-

ments with the trust funds in his hands, then the whole investment, if it can be traced, belongs to the beneficiary of the fund; for a man is not permitted to misuse his position to take the chances of gain to himself if he is successful and of loss to his cestuis que trustent if he fails. But an insolvent man is not in that class of trustees. Whilst a man who is insolvent may be said in one sense to hold his funds in trust for his creditors, he is not an active trustee in the sense that everything he does is for their benefit, or that he carries on business for them, and with their funds. The direct trusteeship only becomes established when proceedings are taken to divest him of his property and apply it to his debts. This court has had occasion to consider the question in the case above referred to of Harriman National Bank v. Huiet, 244 Fed. 216, filed December 23, 1916, where it held as follows:

"To hold that the moment a man became insolvent he became such a trustee for his creditors of his remaining assets that all dispositions of his funds, whether fraudulent or not, must be for their benefit, would be to upset all methods of business. It would be going too far to hold that such was the result, and that a man who once became insolvent must be presumed after that occurrence to make all his dealings and transactions simply as the agent for the creditors for whom he was trustee. The true rule in cases such as the present would be to apply the general doctrine that a man must not make donations without consideration out of his assets to the prejudice of his creditors for value at the time existing. If that be the rule, the question would be: To what extent was any donation made in the procuring of policies by payments of money, where no fraud is shown to exist, as in the case of a fraudulent transfer of property? And the logical answer to that would seem to be that the extent of the donation was the extent to which the assets were actually diminished or lessened by the application of the funds to the purchase of the insurance whereby the donation was made. In the view the court takes of the matter, no court of any controlling authority decreeing equitable relief upon equitable principles has ever gone farther."

That is the extent of the rule as this court understands it decided by the Supreme Court of the United States in the case of Central Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370. There would seem to be a distinction between the cases where the fraud which constitutes the basis for declaring a transfer null and void against creditors is only the inferential fraud arising from the transfer being a donation without consideration and the cases of actual fraud where the attempt has been made collusively, covertly, or otherwise to intentionally defraud creditors by transferring property so as to put it beyond their reach for the benefit of the debtor or his relatives. Many of the cases holding that the entire property purchased out of the debtor's funds the transfer of which may be so annulled must be subjected to the claims of creditors are cases in which the transactions were tainted so to say by this element of intentional fraud. Equity does not regard favorably the action of unclean hands. Additional to this consideration is that of the peculiar character of the property embodied in a life insurance policy as to which the donation to be of any value must be followed by the death of the donor and the unlikelihood of any man intending a fraud which can only be made effective by his death. The true rule would seem to be that in the case of a life insurance policy transferred under the circumstances of the present case the only diversion of funds of which creditors have a right to

complain and which should be returned to them, is the premiums paid, with interest. As there is uncertainty existing as to the time when Cockfield's insolvency first occurred, and as the premiums paid constituted something of value paid for the acquisition of the policy which the deceased had no right to divert from his creditors, the creditors would therefore be entitled to receive the two premiums paid, with interest from the date of the payments.

It is therefore ordered, adjudged, and decreed that the defendant the Volunteer State Life Insurance Company do within 20 days from the date of this decree pay into the registry of this court the sum of $6,000, with interest from the date of the receipt of the proofs of loss to wit, the 16th of March, 1917, as due upon the life insurance policy referred to in the bill of complaint and in answer of the said Volunteer State Life Insurance Company, and that upon such payment the said Volunteer State Life Insurance Company be relieved and discharged from any further liability or payment under the said policy, and that upon the conclusion of this cause the said Volunteer State Life Insurance Company may apply to this court to have delivered to them duly canceled the original insurance policy filed herein as part of the testimony.

It is further ordered, adjudged, and decreed that out of the proceeds of the said policy there shall be paid the costs and expenses of these proceedings, and there shall then be deducted therefrom the sum of $185.70, with interest from the 5th day of February, 1916, and $185.70, with interest from the 5th day of February, 1917, and the balance remaining after the said payments to be paid over to the defendant Reamer L. Cockfield.

It is further ordered, adjudged, and decreed that the said two amounts of $185.70, and interest, be paid to the defendants Ellen Nixon Cockfield and G. W. Dickson, as executors of the last will and testament of S. R. Cockfield, deceased, to be administered by them as assets of the said estate.