EVA LOFARO, Respondent, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.*

Fourth Department, June 29, 1933.

* Revg. 144 Misc. 578.

*Earle C. Bastow,* for the appellant.

*M. S. Ogonowski [Woodward W. Guile* of counsel], for the respondent.

Egdcomb, J. Plaintiff seeks, in this action, to recover the amount which she claims to be due her as the beneficiary of a policy of insurance issued by the defendant, John Hancock Mutual Life Insurance Company, upon the life of Anthony Lofaro.

The policy in suit was issued on March 15, 1929, and by its terms the defendant agreed, subject to the provisions and conditions therein recited, to pay to the beneficiary therein named the sum of $10,000 in the event that the insured died during the continuance of the policy. Attached thereto, and made a part thereof, was a rider, or supplementary contract, whereby the defendant, in consideration of a special yearly premium of $25 in addition to the regular premium, agreed to pay said beneficiary an additional $10,000, if the insured died as the result of bodily injury caused solely by external, violent and accidental means. It was provided in this supplemental contract that the accidental death benefit provision might be discontinued on any policy anniversary upon the request of the insured and upon presentation of the policy to the company for the cancellation of this provision.

Mr. Lofaro died on the 21st day of March, 1931, under such conditions as would entitle the plaintiff to the additional $10,000 called for by said supplementary contract, if that part of the policy was effective on the day of the insured's death. The defendant paid the face amount of the policy, less certain deductions for premiums due, but refused to pay the accidental death benefit, claiming that the supplemental contract had been discontinued and canceled prior to Mr. Lofaro's death. This action is brought to recover the amount claimed to be due because of this double indemnity provision in the policy, and the only question which we are called upon to decide is whether this part of the policy was in effect on March 21, 1931, the day on which Mr. Lofaro died.

The facts relating to the alleged cancellation of this double indemnity portion of the policy are not in dispute. In the latter

part of February, 1931, the insured sent for Mr. Peters, the assistant district manager of the Utica office of the defendant, and told him that he could not afford to pay this additional premium, and that he desired to discontinue the accidental death benefit feature of the policy. Mr. Peters attempted to dissuade him from this purpose, and asked him to think it over. The two met again on several occasions. Mr. Lofaro stated in no uncertain terms that he would not carry this additional insurance any longer, and insisted that it be canceled after March fifteenth, the anniversary date of the policy. On March 11, 1931, Lofaro delivered the policy to Mr. Peters, and on March nineteenth Peters returned with a form which contained the following statement: " I desire to discontinue the special premium for the double indemnity benefit provision of said policy, which provision I hereby agree shall be canceled and eliminated from said policy by re-writing, and I hereby release said company from all liability by reason of said provision."

This Lofaro signed, and on the following morning, March twentieth, Peters handed the statement, together with the policy, to Mr. Dowling, the district cashier of the Utica office of the defendant. Dowling mailed both papers to the company at its home office in Boston, Mass. They were received the following morning, March twenty-first, between eight and nine o'clock.

On the evening of March twentieth Mr. Lofaro was shot by burglars while they were attempting to rob his place of business. He was rushed to the hospital, and died around one o'clock the following morning.

Under these circumstances, had the double indemnity clause of the contract been canceled, or was it in full force and effect at the moment of the insured's death?

To be effective, the surrender or cancellation of this double indemnity provision of the policy must be made in accordance with the requirements imposed by the policy. The exact wording of this provision is important. It reads as follows: " This accidental death benefit provision may be discontinued on any policy anniversary upon request of the Insured and presentation of the policy to the Company for cancellation of this provision."

The requirements necessary to cancel this provision of the policy seem to be two: (1) The " request of the Insured;" (2) " presentation of the policy to the Company for cancellation of this provision." The insured, and the insured alone, was vested with the right to terminate this insurance. The company was clothed with no power, no authority and no discretion in the matter: it had no option one way or the other; it could not prevent the insured from

acting under this clause of the policy. It is true that in the form prepared by the insurance company, and signed by the insured, he states that the double indemnity provision may " be canceled and eliminated from said policy by re-writing," but that statement was not signed by the company. There is no provision in the policy, nor in any other paper signed by the defendant, wherein it is provided that the company shall do anything whatsoever to effectuate the discontinuance or nullification of this accidental death benefit provision.

As defendant's consent is not a prerequisite to the revocation of this part of the policy, no formal cancellation or physical defacement or rewriting of the policy is required; all that is necessary is an unequivocal and absolute request on the part of the insured for a discontinuance of the double indemnity benefit, and a surrender of the policy to the company for cancellation. The revocation becomes complete upon those two requirements being complied with. (*Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608.)

It is true that the policy was not presented to the company at its home office. The contract of insurance contains no such requirement, and it cannot be read into the policy by implication. It was presented to a representative of the company, and that was sufficient. (*Train* v. *Holland Purchase Ins. Co.*, 62 N. Y. 598; *Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 id. 608.)

In the *Crown Point Iron Co.* case just cited, the plaintiff sent to one Page several policies of fire insurance for cancellation. Page had issued one of the policies as agent of the company, and had acted as broker for the insured in procuring the rest of the insurance. The statute requires a fire insurance company to cancel a policy upon the request of the insured. No discretion or option was left to the company. Page retained the policy which he wrote, and forwarded the others to the agent who had issued them. Before they were received, the property burned. As to the company represented by Page, it was held that the request for cancellation which was made to him was sufficient, and that its policy was revoked.

It is true that the policy in suit provides that no person, other than the president, a vice-president, the secretary, or an assistant secretary, was authorized to modify or waive any of its terms or conditions, but this is not a case where it is sought to change or alter the contract itself.

It was discretionary with the insured whether he would continue this additional insurance, or would cancel it on any anniversary date. He could do as he desired. His will and his wish were

supreme. He did everything in his power to abrogate the additional insurance. No one could have done more. The fact that the company did not actually detach this rider from the policy, or indorse it as canceled, or rewrite the agreement, cannot change the insured's purpose, or alter the situation.

But the plaintiff urges that, inasmuch as the statute requires that the policy shall contain the entire contract between the parties (Insurance Law, § 58), and inasmuch as this particular policy specifically states that it and the application therefor constitute the entire contract between the company and the insured, the policy, not having been physically changed before the death of the insured, must be taken as it now stands as the contract between the parties; that to alter the terms of the agreement it must be rewritten, or the change must be noted on the policy itself.

I cannot subscribe to such contention. The policy does state the entire contract between the parties. It distinctly states that the accidental death benefit may be discontinued under certain circumstances. If those circumstances exist, that portion of the contract is void. The contract has not been changed; it is all contained in the policy.

The policy is void, except for certain non-forfeiture values, for non-payment of premiums. If the insured had failed to pay a premium when it became due, and had died thereafter, could it be argued for a moment that the company was liable to the beneficiary for the face of the policy because the company had failed to rewrite the instrument or to note upon its face the fact that any liability thereon was limited to the non-forfeiture value?

Had there been a breach of warranty or a violation of the condition of the policy, could it be successfully urged that the insurance company could not show that fact, but was bound by the terms of the instrument as it was originally written, and was liable for the full amount of the policy because no physical change had been made upon the instrument itself?

The situation here is somewhat analogous to a change of beneficiary. The standard form of policy reserves to the insured the right to change his beneficiary from time to time upon his written request filed at the home office of the company, but provides that the change shall not become effective until the proper indorsement has been made upon the policy. It has repeatedly been held that the change becomes effective when the insured has done all that is required of him to effect the change; that the purpose of the insured cannot be defeated by the omission or neglect of the company to perform some formal or ministerial act. (*Luhrs* v. *Luhrs*, 123 N. Y. 367; *Lahey* v. *Lahey*, 174 id. 146; *Donnelly* v. *Burnham*, 86

App. Div. 226; *State Mutual Life Assurance Co.* v. *Bessett*, 41 R. I. 54; *Navassa Guano Co.* v. *Cockfield*, 244 Fed. 222.)

Where an insured has requested the cash surrender value of his policy, in accordance with the provisions thereof, the beneficiary is not entitled to recover the full amount of the insurance, if death occurs between the time of making the request and the actual receipt of the check for the cash surrender value of the policy. (*Tucker* v. *Equitable Life Assurance Society*, 174 La. 598; 141 So. 71; *Lipman* v. *Equitable Life Assurance Society of U. S.*, 58 F. [2d] 15.)

The defendant having no option or discretion in the matter, and Lofaro having done everything that lay in his power to bring about the cancellation of this double indemnity provision of the policy, the rights of the parties became fixed, and those rights cannot be detracted from or added to by the failure of the insurance company to perform some ministerial act.

The judgment should be reversed, and the complaint dismissed.

All concur.

Judgment reversed on the law, with costs, and motion for a directed verdict in favor of the defendant granted, with costs.