Theodore J. Gram et al., as Executors of John A. Messer, Deceased, Appellants, *v.* Mutual Life Insurance Company of New York, Respondent.

Argued January 5, 1950; decided March 2, 1950.

*Cornelius J. McCarthy* for appellants. I. Insured's letter of February 15, 1946, was not an acceptance of a continuing offer contained in the policies. It was a counteroffer which required acceptance by the company. (*Fitch* v. *Snedaker,* 38 N. Y. 248; *White* v. *Corlies,* 46 N. Y. 467; *Mutual Benefit Life Ins. Co.* v. *Ellis,* 125 F. 2d 127; *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Jones* v. *Union Central Life Ins. Co.,* 265 App. Div. 388, 290 N. Y. 883; *Lofaro* v. *John Hancock Mut. Life Ins. Co.,* 239 App. Div. 54, 272 N. Y. 627; *Pequot Mfg. Corp.* v. *Equitable Life Assur. Soc.,* 253 N. Y. 116; *Equitable Life Ins. Co. of Iowa* v. *Germantown Trust Co.,* 94 F. 2d 898.) II. Insurer's reply letter of March 1st was not an acceptance of insured's counteroffer. At most, that replying letter was a new offer to a new contract. (Restatement, Contracts, §§ 59, 60, 61; 1 Williston on Contracts [Rev. ed.], § 77; *Machinery Utilities Co.* v. *Fry,* 224 App. Div. 392; *Mutual Benefit Life Ins. Co.* v. *Ellis,* 125 F. 2d 127; *Gans* v. *Ætna Life Ins. Co.,* 214 N. Y. 326; *Nielsen* v. *General Amer. Life Ins. Co.,* 89 F. 2d 90; *Norris* v. *Travelers Ins. Co.,* 148 Kan. 122.) III. The terms of insurer's new offer specified the acts which would constitute acceptance thereof. Insured did not perform and expressly refused to perform these conditions. No new contract was effected. (*Equitable Life Ins. Co. of Iowa* v. *Germantown Trust Co.,* 94 F. 2d 898; *Park & Pollard Co.* v. *Industrial Fire Ins. Co.,* 197 App. Div. 671; *Universal Life Ins. Co.* v. *Devore,* 88 Va. 778; *Universal Life Ins. Co* v. *Whitehead,* 58 Miss. 226; *Fogg* v. *Portsmouth Athenaeum,* 44 N. H. 115; *Hobbs* v. *Massasoit Whip Co.,* 158 Mass. 194.) IV. Insurer's reply letter of March 1st was neither an offer which insured could accept, nor an acceptance of insured's counteroffer. Because it was not subscribed by an official designated in section 14 of the original policies, it was an unauthorized communication not binding on the company.

*Roy P. Ohlin, Louis W. Dawson* and *Harold A. Mercer* for respondent. I. The policies were terminated by insured's letter of February 15, 1946, and were not in force after March 5, 1946. (*Gately-Haire Co.* v. *Niagara Fire Ins. Co.,* 221 N. Y. 162; *Pequot Mfg. Corp.* v. *Equitable Life Assur. Soc.,* 253 N. Y. 116; *Crown Point Iron Co.* v. *Ætna Ins. Co.,* 127 N. Y. 608;

*Bibbo* v. *Penn Mut. Life Ins. Co.,* 241 App. Div. 423; *Lipman* v. *Equitable Life Assur. Soc.,* 58 F. 2d 15; *Pacific States Life Ins. Co.* v. *Bryce,* 67 F. 2d 710; *Tucker* v. *Equitable Life Assur. Soc.,* 174 La. 598; *Lofaro* v. *John Hancock Mut. Life Ins. Co.,* 239 App. Div. 54, 272 N. Y. 627; *Jones* v. *Union Central Life Ins. Co.,* 265 App. Div. 388, 290 N. Y. 883.) II. The transaction was irrevocably closed on March 4, 1946. (*Lipman* v. *Equitable Life Assur. Soc.,* 58 F. 2d 15.) III. Insured's unequivocal and unqualified election to surrender the policies and terminate the insurance was sufficient without physical delivery of the policies to defendant. (*Fidelity Mut. Life Ins. Co.* v. *Merchants' & Mechanics' Bank,* 71 F. 2d 777; *Roth* v. *Kaptowsky,* 393 Ill. 484; *Northwestern Mut. Life Ins. Co.* v. *Joseph,* 31 Ky. L. Rep. 714; *Fowler* v. *State Life Ins. Co.,* 160 So. 139 [La.]; *State Life Ins. Co.* v. *Finney,* 216 Ala. 562; *Firpo* v. *Slyter,* 95 Cal. App. 500; *Lofaro* v. *John Hancock Mut. Life Ins. Co.,* 239 App. Div. 54; *Gould* v. *Travelers Ins. Co.,* 266 App. Div. 545; *Witt* v. *John Hancock Mut. Life Ins. Co.,* 246 App. Div. 614; *Rothstone* v. *Norton,* 231 App. Div. 59, 256 N. Y. 601; *Belt* v. *American Central Ins. Co.,* 29 App. Div. 546, 163 N. Y. 555; *Hopkins* v. *Connecticut Gen. Life Ins. Co.,* 225 N. Y. 76.)

CONWAY, J. This is an action to recover upon two policies of insurance issued upon the life of John A. Messer, each in the amount of $25,000, and to recover upon a claim for disability benefits under one of the policies. Each party moved for summary judgment in its favor. Special Term granted defendant's motion, denied plaintiffs' motion, and dismissed the complaint on the merits. The Appellate Division affirmed, one Justice dissenting.

The defendant (hereinafter called company), on March 5, 1930, issued two policies of insurance to John A. Messer payable upon receipt of due proof of death. In addition one of the policies provided for disability payments at the rate of $250 per month during total disability of the insured. The annual premiums were paid by Messer from 1930 up to and including the policy year ending March 5, 1946, at the rate of $1,810 per year. The premium for the year ending March 5, 1947, was tendered by the insured but refused by the company for reasons hereinafter to be discussed. On January 21, 1947, the insured died. The

plaintiffs as executors under the last will and testament of the insured requested the company for forms to enable them to make claim under the policies. The company denied any liability other than its liability to pay the cash surrender value of the policies as of March 5, 1946, asserting that the policies were not in force after that date. This asserted right of denial of liability arose out of an exchange of correspondence between the insured and the company. Company contends that the policy contracts were terminated approximately eleven months prior to the insured's death as the result of insured's election to surrender them.

On February 15, 1946, the insured, Messer, wrote the company:

" Effective on the anniversary date, March 5, 1946, it *will be* my desire to surrender above-numbered policies for their then total cash value, $14,469.00, allowing this amount to remain on deposit with the company at the rate of interest prescribed in the policy, interest payable monthly, *with the provision that the whole or any part of the principal may be withdrawn on any interest date* and with the further provision that, in event of my decease, any balance on deposit shall be payable to my executors, administrators or assigns.

" Please send me appropriate forms for accomplishing the foregoing." (Emphasis supplied.)

Messer had the right to *surrender* the policies for " net cash value " under the following provision in each policy: " *Section 8. Cash value.* At any time after at least three full years' premiums have been duly paid but not later than three months after default in payment of premium, this Policy may be surrendered for its net cash value. Such net cash value shall be the cash value as defined below less any indebtedness to the Company hereon. * * * "

Section 2 of each policy provides for " *Optional Modes of Settlement* " of the proceeds of the policies upon surrender, instead of being paid in one sum. Option 1 provides: " *Option 1.*— By the Company's holding the proceeds as a principal sum payable at the death of the payee, the Company meanwhile paying monthly interest (with a final interest payment to the date of such death) at three per cent a year plus participation in

excess interest at such rate as the Company may determine for each year; * * *."

Then follow three other options providing for payment of equal monthly installments over various periods of years.

In none of the four options provided was there a provision for the withdrawal of principal other than through the installments in options 2, 3 and 4.

Thus the insured in his letter of February 15, 1946, requested forms appropriate for securing a contract which would grant him the *additional very valuable right, not provided for in his policies,* of withdrawing the whole or any part of the principal on any interest-paying date.

The company replied by a letter dated March 1, 1946, enclosing its form of "Income Settlement Request". That was in accord with the following provision of section 2 of each policy reading: "*Method of Election.*— An optional Mode of Settlement can be elected, or a previous election revoked or changed, only by written notice to the Company accompanied by the Policy for endorsement."

The form sent did not embody what the insured had asked for by way of withdrawals.

The letter, however, which was signed by the assistant actuary who under section 14 of the policies had no authority to modify policy terms, said: "As requested in your letter of February 15, 1946, we are enclosing a form, requesting that the cash value of your policies be left with the Company under Option 1, our interest option. The form *also* provides that you will have the right to withdraw the principal sum in whole or in part. *The minimum withdrawals that can be made under Option 1 are $250.* [Neither option 1 nor the form had a provision requiring withdrawals to be at least $250. Indeed the option 1 quoted above made no provision for withdrawals of principal.]

" If satisfactory the form should be signed by you and your signature witnessed. It should be forwarded to the Company not later than March 5, 1946 if the surrender is to be effective as of that date. * * *

" *When we receive the signed request form we will issue a supplementary contract providing for the settlement elected.* * * *" (Emphasis supplied.)

That was in accordance with the following provision of section 2 reading: "If any of the above options has been elected, a supplementary contract bearing the date on which the proceeds of the Policy become payable and providing for the settlement elected will be issued."

The accompanying form entitled "INCOME SETTLEMENT REQUEST, MADE AT MATURITY, OR SURRENDER OF CONTRACT, FOR INCOME TO ONE PERSON" provided in its last paragraph: "VI. I authorize the company to conform the supplementary contract prepared on the basis of this request to company rules and practices not more restrictive than the policy, and *retention by me of the supplementary contract so prepared shall be deemed acceptance of such contract and approval of the company's construction of this request."* (Emphasis supplied.)

On March 4, 1946, the "Income Settlement Request" was signed and forwarded by the insured.

On March 28, 1946, not having heard from the company since he mailed the "Income Settlement Request," Messer sent a telegram to the home office in New York City which read as follows: " * * * IGNORE MY LETTER FEBRUARY 15 OFFERING TO SURRENDER POLICIES FOR CASH VALUES STOP DESIRE TO RETAIN POLICIES AND CONTINUE PREMIUM PAYMENTS STOP CHECK IN MAIL FOR PREMIUMS DUE MARCH 4 1946 * * * "

The insured also sent a check to the company's agent in the amount of the annual premium. The check mailed on March 28, 1946, arrived within the grace period of thirty-one days (provided in section 12 of the policies) after a default in payment during which time the insurance was to continue in full effect. On *April 1, 1946,* the "supplementary contract" was tendered to Messer and his check was tendered back to Messer. Tender was refused. This tender of the "supplementary contract" and the insured's check was the first and only notice to the insured that any refusal to continue the policy contracts would be attempted.

The policies have never been surrendered to the company and at all times have been in the possession of the insured and the executors of his estate.

It is a well-settled rule of law that when the insured is given the right or option under a life insurance policy to surrender the policy and accept its cash surrender value such right or option constitutes a continuing offer on the part of the insurance company, which, when accepted by the insured through the exercise of such right or option, fixes the rights of the parties without further action on the part of the company. (*Pequot Mfg. Corp.* v. *Equitable Life Assur. Soc.*, 253 N. Y. 116; *Lofaro* v. *John Hancock Mut. Life Ins. Co.*, 239 App. Div. 54, affd. 272 N. Y. 627; *Gately-Haire Co.* v. *Niagara Fire Ins. Co.*, 221 N. Y. 162; *Crown Point Iron Co.* v. *Aetna Ins. Co.*, 127 N. Y. 608.) It is true that the insured had an absolute right to surrender his policies for their net cash surrender value and either take the proceeds in cash in one sum or elect that the proceeds be paid in accordance with one of the options. However, insured's letter of February 15th did not effect an election of any one of the listed options, because the settlement he desired was not in the form of any of the options offered by the company in section 2 of its policies. As was said in *Nielsen* v. *General Amer. Life Ins. Co.* (89 F. 2d 90, 93): '' The company did not write that form at the time the original policy was issued. Manifestly, the new policy was not one which the insured had the right to demand under the exchange provision. He could not have compelled its issuance in fulfillment of obligations fixed by that provision. It was a separate and distinct contract resulting from negotiation and a new meeting of the minds.''

The instant case is thus distinguishable from the cited cases in that in all of them an option was accepted according to its terms as stipulated. Insured's letter expressly requested the addition of a provision '' that the whole or any part of the principal may be withdrawn on any interest date ''. He had no right to such provision under any of the permitted options which provided for the payment of interest only in option 1, or for payments for the periods elected under options 2, 3 and 4. Therefore the insured's letter of February 15th was not an acceptance of a continuing offer contained in the policies. *The insured could not accept what was not offered.* It is a fundamental rule of contract law that an acceptance must comply with the terms of the offer. (Restatement, Contracts, §§ 59,

60, 61; 1 Williston on Contracts [Rev. ed.], §§ 73, 76; *Barber-Greene Co.* v. *M. F. Dollard, Jr., Inc.,* 239 App. Div. 655, 658, affd. 267 N. Y. 545; *White* v. *Corlies,* 46 N. Y. 467; *Eustathopoulo* v. *Gillespie,* 218 App. Div. 179, 186.) Therefore his letter was in effect a counteroffer made by the insured to the company. (Restatement, Contracts, § 60; see *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Jones* v. *Union Central Life Ins. Co.,* 265 App. Div. 388, affd. 290 N. Y. 883; *Machinery Utilities Co.* v. *Fry,* 224 App. Div. 392.)

The *Jones* case, cited *supra* is apposite here. In that case the insured had defaulted in the payment of premiums. Option 2 of the policy provided that in such event the cash surrender value might be applied to the purchase of nonparticipating, paid-up life insurance, upon the written request of the insured and upon the surrender of the policy " ' before the expiration of the days of grace.' " (P. 389.) The grace period passed. Thereafter insured applied for paid-up insurance, forwarded the application to the company and surrendered the old policy. Before the company accepted the application the insured died. Upon refusal of the company to pay the face of the policy, the beneficiary brought suit since the policy had been automatically extended as term insurance. The company's defense was that a contract had been effected by the insured's request for a paid-up policy and that no acceptance of the offer was necessary. The Appellate Division expressly rejecting the argument that acceptance by the company was not necessary, said at page 392: " But in the case at bar *the consent of the company is a ' prerequisite ' to the change of the policy to paid-up life insurance.* This is so because the right of the insured to demand that the policy be changed to paid-up life insurance had terminated by his failure to exercise such right before the expiration of the days of grace." (Emphasis supplied.)

We affirmed. In the instant case likewise the consent of the company was necessary. In legal effect there is no difference between an inability to accept an option which has terminated as in the *Jones* case *(supra),* and inability to accept an option which has never existed or been offered as in the instant case.

The insurer's reply of March 1st was not an acceptance of the insured's counteroffer. The company did not accept the insured's counteroffer of withdrawals of principal without

limitation as to amount. Instead it sent a letter and the form of " Income Settlement. Request," offering the insured the right to withdrawals of principal but requiring a withdrawal of at least $250 if any were made. The statement in the letter that " If satisfactory the form should be signed by you ", shows clearly that the company did not consider it an acceptance of insured's offer, but a rejection and a counteroffer. This counteroffer was not embodied in any option provision of the policy. The portion thereof which offered to hold the proceeds as a principal sum and pay interest monthly thereon is part of option 1. The portion which dealt with the payment of installments of principal *and interest* is found in options 2, 3 and 4. *In none of the options is there any provision permitting a withdrawal of principal qua principal.* Neither the company letter nor the " Income Settlement Request " made any provision for payment of the portion of the principal sum not distributed to the insured in his lifetime. The offer then was new and distinct. The so-called " supplementary contract " *later prepared* made provision for payment of that portion of the principal sum which was not distributed in the lifetime of the insured to his executors or administrators but the company still declined to make that portion payable to insured's " executors, administrators *or assigns* " as requested by him in his letter of February 15th. (Emphasis supplied.)

The distinction between a supplemental or supplementary contract and a new contract of insurance is of prime importance in the case at bar. Under a supplemental contract the rights and duties of the parties flow from the original contract, whereas under a new contract they flow from the new agreement. Consequently to determine whether there has been a completed bargain it is necessary to consider the terms of offer and acceptance specified by the parties in the correspondence and forms relating to the new contract. Judge AUGUSTUS HAND speaking for a unanimous court in *Mutual Benefit Life Ins. Co.* v. *Ellis* (125 F. 2d 127, Note 138 A. L. R. 1484, certiorari denied 316 U. S. 655) said that a supplemental contract of insurance can result only from acceptance of the express terms of a particular option. There is marked similarity between the option provisions and request for a settlement in the *Ellis* case, cited *supra,* and in the case at bar.

The court said (p. 130): "The certificate was not a supplementary insurance contract, for Mrs. Addie accepted none of the options in any accurate or legal sense. She was only entitled to exercise a particular option ' at the maturity ' of the original policy — that is, upon the death of the insured. She perhaps intended to accept Settlement Option A when she requested the company to retain the proceeds of the policies and make interest payments to her during her life. But even though the power to dispose of the principal after her death be thought to have been implied under Option A and to have been exercised by the direction to pay it to the sisters, her retention of the right to have it distributed to herself through the exercise of Options B and C shows that she did not in fact exercise any one of the original options. There was, however, nothing to prevent her from making a *new agreement* with the company embodying the terms of the certificate and providing that the principal of the policies should be paid to her husband's three sisters, *whose rights would not be derived from the policies or through the exercise of the options but from the new agreement.*" (Emphasis supplied.)

In the instant case the "Income Settlement Request" is analogous to the form issued by the insurance company in the *Ellis* case (*supra*) by which the application for an "Interest Income Bearing Certificate" was made. That certificate so issued is analogous to the so-called "supplementary contract" made out by the insurance company in the case at bar. Thus in both cases negotiations between an insurance company and an individual occurred, looking toward the formation of a new contract to come into existence in the future. Other cases in which the courts have found that any modification of the original contract results in a new contract with new and separate rights are: *Gans* v. *Aetna Life Ins. Co.* (214 N. Y. 326); *Landy* v. *New York Life Ins. Co.* (170 Misc. 942, affd. 256 App. Div. 813); *Nielsen* v. *General Amer. Life Ins. Co.* (89 F. 2d 90, *supra*); see *Aetna Life Ins. Co.* v. *Dunken* (266 U. S. 389, 399–400).

The insured under his policy was entitled to have the net cash value within the terms provided specifically in section 8 of the policy or the insured could surrender the policy to "* * * be settled by one of the following optional Modes of Settlement instead of being paid in one sum" under section 2.

He did neither in the terms offered to him and those terms were indivisible.

To summarize it in three paragraphs, it is a true supplemental or " supplementary " life insurance contract when, for instance, the life insurance contract provides a series of options, any one of which may be elected by the insured at an appropriate time. The supplemental contract thus provided for springs into existence upon the making of the election, and by reason of the election, without any further act of the insurance company.

A modified or new or changed life insurance contract comes into existence when a new offer, not contemplated or provided for in the original life insurance contract, is made either by the insured or the insurer and accepted in its exact terms by the other. If not so accepted, there is, of course, a new offer which must in turn be accepted.

The so-called "supplementary contract", as the term is applied by the insurance company to the paper dated March 19, 1946, is a new offer to contract which had to be accepted in the manner provided in the company's " Income Settlement Request " and with that manner there was concededly no compliance. Instead it is claimed that there was a waiver of provisions therein by the *insurance company*, not by the insured, or that the conditions as to the delivery of the policies and as to retention of the " supplementary contract " constituting evidence of acceptance were surplusage or meaningless.

The terms of the company's new offer as embodied in the letter of March 1st and the " Income Settlement Request " form specified the acts which would constitute a binding acceptance of the offer. The insured refused to accept the new contract as offered. Therefore, no new contract was effected. The application form forwarded by the company contained a number of provisions outlining the terms of the proposed contract. Paragraph VI provided in part: *" Retention by me of the supplementary contract so prepared shall be deemed acceptance of such contract* and approval of the *company's construction* of this request."* (Emphasis supplied.)

That brings us back to section 2 of the policy entitled *" Optional Modes of Settlement."* Whatever may have been the reasons for drafting section 2 with all the limitations contained therein it is abundantly clear that the insured in his

letter of February 15th in which he asked for the right to draw principal after policy surrender and to provide for payment of the balance remaining at his death to his executors, administrators or assigns, was applying for a new contract and that his offer to make such new contract had to be accepted and approved by the proper officer under section 14 before there could be any modification of his original insurance contract. Seemingly the company never contemplated accepting his offer *in toto* because it never gave the insured the right to have the money remaining with the company after his death paid to his assigns. This alone indicates not only that the insured did not accept something offered in the optional *" Modes of Settlement "* but that what he was seeking was never consented to or granted by the company even in its " supplementary contract ". Consequently he was to have the right to examine the new contract and reject it if not suitable to him. " It is usually considered that when the insured applies for a contract, he has a reasonable time after receipt thereof to examine its terms and return it if unsatisfactory." (1 Appleman on Insurance Law and Practice, § 172.) In the instant case the insured not only refused to retain the new contract offered but refused to accept it and his telegram before any tender of the new contract was attempted, evidenced that he did not intend to accept such tender. Moreover, the delivery of the new contract was to be concurrent with the surrender of the original policies. Examination and retention of the new contract to be issued to him were necessary, by the company's own terms as prescribed by the language of the company in its " Income Settlement Request," before there was to be a binding election to give up his old policies. Any and all ambiguities and differences of opinion affecting construction (1) as to the meaning of a provision for retention of the new contract and (2) as to the surrender of the original policy insurance contracts, must be resolved against the company since it drafted the policy contracts and " Income Settlement Request " form. (*Hart* v. *Travelers Ins. Co.,* 236 App. Div. 309, affd. 261 N. Y. 563; 1 Williston on Contracts [Rev. ed.], § 37; 3 Williston on Contracts [Rev. ed.], § 621; McKinney's Insurance Law [1949 ed.], § 155, note 5, and cases cited thereunder.)

The insured refused to surrender his old policies, a condition precedent to the issuance of a new policy. The policy provision " *Method of Election* " provides: " An optional Mode of Settlement can be elected or a previous election revoked or changed, *only* by written notice to the Company *accompanied by the Policy for endorsement.*" (Emphasis supplied.)

The requirement for surrender of the policies is repeated in the miscellaneous provision in section 14 of the policies: " *In any settlement of this Policy* at its maturity as a death claim *or on surrender,* any indebtedness to the Company on this Policy shall be deducted and *surrender of the Policy to the Company will be required.*" (Emphasis supplied.)

The surrender requirements of the old policies were repeated by the company in its letter of March 1st: " When we receive the signed request form we will issue a supplementary contract providing for the settlement elected. The contract will be forwarded * * * *to be delivered in exchange for the policies, if the policies have not previously been sent to the Home Office.*" (Emphasis supplied.)

The company argues that a physical surrender of the policies is not necessary to terminate the insurance. However, the cases it relies upon involve situations in which an option was elected or a policy was cancelled. In all of them action by the insured effected the option or the cancellation without more. The right conferred upon the insured was therefore absolute. The company could not withhold its consent to defeat that right. As was said in *Fidelity Mut. Life Ins. Co.* v. *Merchants' & Mechanics' Bank* (71 F. 2d 777, 778, certiorari denied 293 U. S. 593): " The right of the bank as assignee to surrender the policy by December 29th for cash measured by its surrender value *was an absolute option dependent only on the bank's will and act, and not requiring any consent on the part of the insurance company.*" (Emphasis supplied.)

The company argues that even though the surrender of the old policy contract and retention of the new one were conditions precedent to the acceptance, that such conditions existed for the benefit of the insurer and could be waived. By reason of the company's offer of a new contract the insured was to have the right to receive, examine and return the policy if not satisfactory. Retention of it by the insured was *specified by the*

*company* as the act making a completed acceptance. That provision was for the benefit of the insured and could not be waived by the company. (See 1 Williston on Contracts [Rev. ed.], § 92, pp. 291–292.) Until those acts were performed by the insured the contract did not come into being. They were not performed. Therefore the payment of the premium and sending of the telegram to the company on March 28th kept the policy contracts in full force.

It is evident that the tender of payment of premium (no one questions the fact that it was by check) was timely and should have been accepted so that the payment would have carried beyond the death of deceased. The tender of payment of the premium for the year March 5, 1946, to March 5, 1947, kept the policy alive for all purposes during that period, including the right of the insured to disability benefits. However, since no option under section 2 was elected and there was no meeting of the minds of the parties as to the creation of a new " Mode of Settlement " for this insured alone, the insured would have been insured without such tender, or any action on his part at all, for fourteen years and six months, or until he was sixty-eight years and six months old, for the face amount of the policies from March 5, 1946, according to the table under section 10. (See sections 8 and 9 of the policies.)

In the affidavit submitted by respondent company, it is stated that the plaintiffs are not entitled to summary judgment for disability benefits under policy No. 4303328 because " no evidentiary facts of such disability are set forth in plaintiffs' moving papers ". In the affidavit of T. J. Gram, submitted by the plaintiffs, it is set forth that the insured was permanently and totally disabled, before he reached the age of sixty, from April 1, 1946, until the date of his death. The affidavit was not made upon information and belief. The deponent states as a fact known to him: " * * * that during said period, the insured, John A. Messer, was totally unable to carry on and did not carry on his usual occupation between said dates, and for a long period of that time was a patient at the St. Francis Hospital in Olean, New York."

None of the statements in plaintiffs' affidavit is controverted by the defendant. The company refused to furnish forms for the filing of a claim for total disability benefits. Plaintiffs are

entitled to recover disability benefits which accrued under the policy during the period of total disability of the insured from April 1, 1946, to his death.

There does not here arise a situation such as that in *Sanders* v. *Pottlitzer Bros. Fruit Co.* (144 N. Y. 209), where we construed several writings and determined as a matter of law, (1) that the parties had entered into a contract, (2) that all that remained was to memorialize it in a formal writing, and (3) that failure so to do did not affect the existence or validity of the contract. But the very text of the writings here in question demonstrates their preliminary character, since that text speaks of an ultimate " supplementary contract " as the end of the transaction — a fact that is buttressed by the circumstance that, as we have noted (*supra,* p. 380), the letter accompanying the " Income Settlement Request " was not written by an officer authorized under section 14 to modify or change the policy.

The judgments should be reversed and the motion by appellants for summary judgment granted, with costs in all courts.

DESMOND, J. (dissenting). I vote for affirmance. With the rules of law stated in the majority opinion I have no quarrel. However, the undisputed, unambiguous documentary proof requires, as matter of law, a holding that, when the insured here signed and returned the request form dated March 4, 1946, the minds of the parties had met, and there then existed a complete agreement as to the terms of a cancellation and surrender, effective March 5, 1946 (*Pequot Mfg. Corp.* v. *Equitable Life Assur. Soc.,* 253 N. Y. 116, 121). That very March 4, 1946, document signed by the insured, starts out with the statement that the policies " are surrendered as of March 5, 1946 ". Defendant had by letter notified the insured that the request form " should be forwarded to the Company not later than March 5, 1946 if the surrender is to be effective as of that date." The insured did so forward it, and the surrender did become effective.

The parties had agreed, by the same exchange of documents, that the contemplated formal supplementary contract was to be no more than a memorial, or evidence, of the existing pact (see *1130 President St. Corp.* v. *Bolton Realty Corp.,* 300 N. Y.

63), and the insured could not reject that memorial so long as it conformed to the arrangement already in effect. No claim has ever been made that the supplementary contract, when tendered by defendant to the insured in due course, was in any way inconsistent with the agreement already concluded. Nevertheless, the insured, at just about the time when, according to the complaint here, he became totally disabled, attempted to revoke the cancellation. He had no right to do so.

The failure of the insured physically to return the policies is of no particular significance and added nothing to his rights (*Gately-Haire Co.* v. *Niagara Fire Ins. Co.*, 221 N. Y. 162; *Lofaro* v. *John Hancock Mut. Life Ins. Co.*, 272 N. Y. 627; *Foley* v. *Equitable Life Assur. Soc.*, 290 N. Y. 424; *Degnan* v. *Metropolitan Life Ins. Co.*, 178 Misc. 312).

LOUGHRAN, Ch. J., LEWIS, DYE and FROESSEL, JJ., concur with CONWAY, J.; DESMOND, J., dissents in opinion in which FULD, J., concurs.

Judgments reversed, etc.