88 N.J. Super. 136 (1965)
211 A.2d 204
THE BOARD OF TRUSTEES OF THE UNITARIAN CHURCH, ETC., PLAINTIFF-RESPONDENT,
v.
NATIONWIDE LIFE INSURANCE COMPANY, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1965.
Decided June 10, 1965.
*137 Before Judges KILKENNY, SULLIVAN and LEWIS.
Mr. Henry H. Rubenson argued the cause for appellant (Messrs. Oppenheim & Oppenheim, attorneys).
Mr. Fred S. Lafer argued the cause for respondent (Messrs. Hoffmann, Humphreys & Lafer, attorneys).
*138 The opinion of the court was delivered by SULLIVAN, J.A.D.
This appeal involves the issue whether plaintiff, the beneficiary named in a life insurance policy on the life of one William J. Firmin issued by defendant insurance company, is entitled to the face amount of the policy, the insured having died, or only the cash surrender value thereof. The trial court entered a summary judgment that plaintiff was entitled to the face amount of the policy and defendant appeals.
The facts which are not in dispute are as follows:
Prior to June 5, 1961, William J. Firmin purchased a 20-year endowment policy from defendant Nationwide Life Insurance Company (Nationwide). Firmin designated the Unitarian Church, Montclair, N.J. (church), plaintiff herein, as the irrevocable beneficiary of said policy. About September 1962 Firmin notified the church that he would not continue the payment of premiums on the policy (apparently a premium was then due), and advised the church that it could continue to pay the premiums, convert the policy into paid-up insurance, or surrender the policy for its cash value. The church decided to accept the cash surrender value and wrote to Nationwide on September 11, 1962 requesting a cash surrender application. Nationwide, on September 24, 1962, forwarded to the church a form of election to accept cash value. The instructions accompanying the form specified that it was to be signed by the insured and the beneficiary. Also, the policy by its terms provided that upon election to receive the cash surrender value, "the Policy must be returned to the Company for surrender."
The church mailed the form to Firmin, who was then living in Germany. Firmin signed it on October 15, 1962 and forwarded it to the church, which caused the form of election to be signed by its treasurer on or about November 13, 1962. The church then mailed the original policy and the signed election to Nationwide on November 26, which received them on the 28. It was then learned for the first time that Firmin had died on November 17, 1962. Whereupon the church demanded *139 $1,000, the face amount of the policy. Nationwide refused to pay the $1,000, and tendered $137.60, the cash surrender value thereof, which the church would not accept. This suit followed. It is undisputed that the church and Nationwide were unaware of Firmin's death until after the signed election and the original policy had been received by Nationwide.
On this appeal Nationwide argues that under the terms of the policy only the insured could exercise the option to surrender the policy for its cash value even though the consent of the beneficiary had to be obtained. The conclusion urged upon us is that when Firmin signed the election to accept the cash surrender value more than a month prior to his death, that was an acceptance of the option to surrender the policy and fixed the rights of the parties at that time.
Where the insured is given the right under a life insurance policy to surrender the policy and accept its cash surrender value, such right constitutes a continuing offer on the part of the insurance company which, when accepted by the insured, fixes the rights of the parties without further action on the part of the company. Gram v. Mutual Life Ins. Co. of New York, 300 N.Y. 375, 91 N.E.2d 307 (Ct. App. 1950); Occidental Life Ins. Co. of California v. Templeton, 219 Ga. 39, 131 S.E.2d 530 (Sup. Ct. 1963). However, the crucial question is, when is the option considered as having been accepted or exercised? As above noted, Nationwide contends that as soon as the insured signed the election in Germany, the option had then been irrevocably and finally exercised.
We are not dealing with a situation where the insured died after mailing the policy and election to surrender the same to the insurance company, but before receipt thereof by the company. See 29 Am. Jur., Insurance, § 631 (1960); 45 C.J.S. Insurance § 460b, pp. 123-124 (1946). Here the insured died on November 17, and the papers were not mailed to Nationwide by the church until November 26. Nor is this an instance where the papers were delivered to Nationwide's agent *140 prior to the insured's death. Cf. Lofaro v. John Hancock Mut. Life Ins. Co., 239 App. Div. 54, 265 N.Y.S. 724 (App. Div. 1933), affirmed 272 N.Y. 627, 5 N.E.2d 365 (Ct. App. 1934).
Also, the policy provided that upon election to receive the cash surrender value, it had to be returned to the company for surrender. Therefore, an essential condition of the exercise of the option was the delivery of the policy to Nationwide.
At the time the signed election to accept the cash surrender value was delivered, and the original policy surrendered, to Nationwide, the insured was dead and there was due on the policy the face amount thereof. Consequently, the purported election to accept the cash surrender value was based on a mutual mistake of fact and was not legally binding on plaintiff. Riegel v. American Life Ins. Co., 153 Pa. 134, 25 A. 1070, 19 L.R.A. 166 (Sup. Ct. 1893); 3 Appleman, Insurance, § 1760 (1941). Cf. Boyd v. Aetna Life Ins. Co., 310 Ill. App. 547, 35 N.E.2d 99 (App. Ct. 1941).
Nationwide argues that the policy was in default during the entire period involved, since there was an overdue premium on the policy which was not paid. This is of no significance. The policy, by its terms, provided for automatic application of the cash value of the policy to any unpaid premiums. Admittedly the cash value was more than adequate to pay the overdue premium.
Affirmed.