opinion of the court
David B. Saxe, J.
In the increasingly popular area of co-operative conversions in which tenants, often without legal counsel, are asked to make rapid, complex and important decisions about the status of their apartments based upon a prolix and often incomprehensible co-op offering plan, traditional principles of offer and acceptance as they relate to the attempted exercise of co-operative subscription rights, must be enriched by modern notions of public policy and fairness.
*653 This is an action seeking specific performance of a contract against the sponsor of a co-op plan based on what is claimed to be an agreement to sell, at an “insiders” discount price, the co-operative shares allotted to the plaintiff’s apartment. The defendant has moved for summary judgment and alternative relief as follows: (1) dismissal of the complaint on the ground that the plaintiff never accepted the offer contained in the co-operative conversion offering plan in accordance with its terms; (2) striking the claim for equitable relief because of an adequate remedy at law; (3) limiting the claim for damages to the sum of $29,308 due to the plaintiff’s alleged failure to mitigate damages; and (4) striking plaintiff’s claim for punitive damages.
Sometime in 1979 the tenants residing at 15 West 72nd Street were notified of the defendant sponsor’s intention to convert the building to co-operative ownership. After the offering plan was accepted for filing by the Attorney-General, each tenant received a copy of the plan.
The tenants were each offered the exclusive subscription option to purchase the shares allocated to their apartments at a 25% discount off the price charged to those interested purchasers not then in occupancy, provided a validly executed subscription agreement was tendered to the sponsor on or before the close of business on the day prior to the closing date.
Although the closing was originally scheduled to take place on May 12, 1980, the date was later changed to May 22,1980. The aspect of the offer which provided for sponsor financing was withdrawn by the defendant for all tenants who had not exercised their options to subscribe before May 12, 1980.
The plaintiff attempted to exercise his right to purchase his apartment at the insider discount price by submitting to the sponsor on or about May 14, 1980, an executed copy of the subscription agreement. Having previously been notified that sponsor financing was no longer available, the plaintiff procured alternate financing and did not submit any of the forms otherwise necessary for sponsor financing approval. The plaintiff assumed that he would be the owner of the apartment.
*654 • The defendant thought otherwise. Because the plaintiff had failed to strike the provision relating to sponsor financing from the submitted agreement, the defendant deemed the plaintiff’s application “incomplete” and returned the documents to the plaintiff. The plaintiff first learned of the defendant’s rejection when he received the subscription agreement on May 21, 1980, the last day of the insider discount period. The plaintiff then deleted the offending paragraph and attempted to resubmit the subscription agreement, but, by this time the period within which to receive the discount had expired. The sponsor once again rejected his papers. At all times since then, the defendant has stood ready to sell the plaintiff the cooperative shares at the outsider or higher market price.
It is the defendant’s principal contention that no contract was ever formed between the parties because there was never a valid acceptance of the sponsor’s offer. The defendant maintains that the plaintiff’s first attempt to accept the defendant’s offer was defective because the plaintiff submitted an incomplete application; the clause relating to the sponsor financing obligations had not been stricken from it. The plaintiff’s second attempt was likewise defective because, according to the terms of the offering plan, it was submitted after the time period within which the option could be exercised in order to receive the insider discount.
The plaintiff contends that a valid contract was formed with the defendant for the co-op shares at the insider price, and he further asserts that specific performance of the agreement is the proper remedy. He contends that it was the defendant’s, rather than his own obligation, to strike the terms from the offering plan. Having failed to do this when the plaintiff submitted his plan on time, the defendant cannot later claim that the agreement was not properly executed. In any event, the plaintiff argues that the inclusion or exclusion of this clause did not affect the rights and obligations of the parties insofar as the provision did not obligate the defendant to provide financing. According to this theory, the deletion of this provision was unnecessary and an invalid basis on which to refuse to accept plaintiff’s submitted subscription agreement.
*655 Was there a valid acceptance of the defendant’s offer by the plaintiff? An offer must be accepted in accordance with its terms in order for a contract to result. (Endres v Buffalo Auto. Dealers Assn., 29 Misc 2d 756; Gram v Mutual Life Ins. Co. of N. Y., 300 NY 375;. 21 NY Jur 2d, Contracts, §§30, 46.) Resolution of the issue depends upon who had the obligation to strike the terms relating to sponsor financing contained in the subscription agreement.
The plaintiff contends that he was told by the defendant only that sponsor financing was no longer available and that some clause in the offering plan (which exceeded over 200 pages in length) relating to sponsor financing would now have to be stricken. He alleges that he was never instructed, prior to his first attempt to exercise the option, which clauses it was necessary to delete or that it was his responsibility to strike such provisions. The defendant’s agent stated that “I informed plaintiff that he could obtain a discount price for his apartment if he tendered a validly executed Subscription Agreement before the close of business on the business day prior to the Closing Date. I also told him that the special 9V2% Sponsor Financing was no longer available and that in order to tender a valid Subscription Agreement he would have to delete those portions of the Subscription Agreement which related to such Special Financing”. Although there is a factual dispute as to whether or not the defendant informed the plaintiff that it was the plaintiff’s obligation to delete the provision relating to sponsor financing, it appears that the plaintiff was never instructed as to which specific provision in the subscription agreement (i.e., par 3 [A]) .needed to be deleted.
When, because of a change of circumstances by the sponsor, it is necessary to cross out a term of the printed contract (i.e., subscription agreement), which party is obligated to ensure that this is done? I hold that under the facts here, when it is necessary to make deletions and additions to the printed terms of a co-op subscription agreement, it is fair to impose that obligation upon the sponsor of the plan.
The sponsor’s failure to perform this act after the submission of an otherwise completed subscription agreement *656 by a tenant nevertheless constitutes a valid acceptance by the tenant of the sponsor’s offer.
In summary, the facts here support imposing this obligation upon the sponsor. First, the contract itself is a lengthy and complex document drafted by the defendant. (Cf. 22 NY Jur 2d, Contracts, § 228.) Second, the tenant, who was not represented by counsel, was forced to make an important decision relating to his apartment under exacting time pressures. Finally, the failure to strike the allegedly offensive language relating to sponsor financing did not materially change the terms of the contract and impose an obligation upon the sponsor where one did not otherwise exist. This conclusion ineluctably flows from the fact that sponsor had no duty to extend credit where the tenant did not submit certain forms along with the subscription agreement. Here, Mr. Brand never attempted to submit these additional documents to the sponsor because he had no intention of receiving sponsor financing, having previously procured alternate financing approval. Thus, the sponsor had no obligation to provide financing to the plaintiff regardless of the presence or absence of the clause in the agreement. Nor was any other aspect of the agreement materially affected by the inclusion or exclusion of the clause.
Based upon the foregoing analysis, I hold that the plaintiff’s attempt to exercise his subscription option was proper — a valid offer and acceptance had transpired. That being said, the defendant’s refusal to perform according to the terms of the contract constituted a breach.
The plaintiff is entitle^, to specific performance of the contract. (See Dobbs, Remedies, § 12.10.) The defendant’s contention that the plaintiff’s recovery should be limited to approximately $29,000 in money damages based on the plaintiff’s alleged failure to mitigate damages is incorrect. I do not accept defendant’s theory that the plaintiff was obligated to purchase his apartment at the outsider price ($117,228) when the defendant refused to sell it at the insider 25% discount price ($87,920), thereby placing a ceiling1 upon the loss potential in the sum of $29,000. The plaintiff is entitled to specific performance at the original insidér discount price (plus interest dating from May 21, *657 1980) notwithstanding the fact that the market price of the apartment has steadily increased that date.
Finally, I find that the plaintiff has not established a right to recover punitive damages.
Summary judgment for plaintiff. Settle judgment.