195 N.J. Super. 478 (1984)
480 A.2d 919
JUNE H. MEIER, TRUSTEE, UNDER TRUST DATED NOVEMBER 25, 1978, AND NORDLING DEAN ELECTRIC COMPANY, INC., PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
NEW JERSEY LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1984.
Decided July 30, 1984.
*480 Before Judges BOTTER, PRESSLER and O'BRIEN.
Laurence B. Orloff argued the cause for appellant-cross-respondent (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Laurence Orloff, of counsel; Alan G. Trembulak, on the brief).
Raymond J. Fleming argued the cause for respondents-cross-appellants (Feuerstein, Sachs, Maitlin, Rosenstein & Fleming, attorneys; Raymond J. Fleming, on the brief).
The majority opinion of the court was delivered by O'BRIEN, J.A.D.
*481 This is an appeal by defendant insurance company from a summary judgment in favor of plaintiffs, owner and beneficiaries of a life insurance policy for the face amount of the policy plus interest. Plaintiffs cross-appeal from the dismissal of their claim for punitive damages and their application for counsel fees. We affirm.
Plaintiff June H. Meier, trustee under trust dated November 25, 1978 (June Meier), was the owner and a beneficiary of a policy of life insurance issued by defendant New Jersey Life Insurance Company (NJL) in the face amount of $250,000, insuring the life of her husband Frank Meier. Plaintiff Nordling Dean Electric Company, Inc. (Nordling), of which Frank Meier was an executive, is the beneficiary to the extent of the cash value of the policy and was also the collateral assignee of the policy as security for its advancement of premium payments.[1] After payment of these sums to Nordling, the balance of the proceeds was payable to June Meier.
Premiums on the policy were payable quarterly, on February 11, May 11, August 11 and November 11. The policy had an automatic premium loan provision (APL), which was triggered first by non-payment of the premium due August 11, 1980, and again on November 11, 1980. It is admitted that the policy had sufficient value to pay the premium due February 11, 1981, which should have been paid by March 14 (the end of the 31-day grace period). Allegedly, NJL did not resort to the APL to pay the February premium because on March 11, 1981 it received a message from Sanford Feingold, its agent, dated March 9, which stated: "Please be advised that the above captioned policy has been surrendered." The first question raised by this appeal is whether this message, followed by *482 receipt by NJL of the executed cash surrender form, constituted a "proper written request" to make the APL ineffective as permitted under the terms of the policy. That question is determinative of the issue of whether the policy was in default at the time of Frank Meier's death. We decide both these questions in plaintiffs' favor.
We regard these documents as only notice of an intention to surrender. Under the terms of the policy surrender is a unitary action requiring submission of both the executed cash surrender form and the policy itself or an executed lost policy agreement. The actions of NJL subsequent to receipt of these documents do not reflect that it had accepted them as a "proper written request" to make the APL provision "ineffective." It never advised June Meier or Nordling that the policy was in default or continued as "Reduced Paid Up Insurance" as it had done with the other policy which did not have sufficient cash surrender value for an APL. The fact that NJL did not process the APL is not determinative[2] since, as a matter of internal procedure, APL's were never processed until at least 15 days after expiration of the grace period. Notice to June Meier of the APL's for payment of the August 11 and November 11 premiums were not sent until 43 days and 73 days respectively after the expiration of the grace period. However, it would seem to us reasonable for the policy owner to expect that the APL would "automatically" pay a "premium due and remaining unpaid" as required by the policy, within the grace period. Yet the cash surrender form executed by June Meier was not received by NJL until March 26, 1981, 12 days after expiration of the grace period. Furthermore, it appears that NJL did not *483 take the position that the policy had lapsed for non-payment of premium because the APL had been revoked by the owner until after Frank Meier's death. We reject this argument and treat the policy as if the APL had been made for payment of the February 11 premium. See Board of Trustees of Unitarian Church v. Nationwide Ins. Co., 88 N.J. Super. 136, 140 (App. Div. 1965), where a similar argument that a policy was in default was rejected by the court.
Subsequent to its receipt of the message from its agent that the policy had been surrendered, NJL sent a letter to June Meier, dated March 13, 1981, expressing regret at the news that she wished to terminate her policy, and concluding:
If after due consideration, you still wish to surrender your policy, please complete the enclosed cash surrender form and return it to our office with the policy itself. Upon receipt we will release the cash value to you promptly.
The only provisions in the policy concerning cash surrender are as follows:
CASH VALUE  The cash value of this policy at any time when there is no premium in default shall be as stated in the table of non-forfeiture values. This policy may be surrendered for its cash surrender value....
SURRENDER VALUE  The surrender value of this policy is the cash value less any indebtedness. The surrender value will be paid by the Company upon the owner's written request and surrender of this policy.
In response to its letter of March 13, 1981, NJL received a note from its agent, Sanford Feingold, dated March 24, 1981, enclosing the request for cash surrender value form executed by June Meier. This document was on the letterhead of NJL and presumably was the same document enclosed in the letter of March 13, 1981 to June Meier.[3] By letter dated March 27, *484 1981 addressed to Frank Meier, NJL acknowledged receipt of the request to surrender, and the letter continued:
As per contract provisions and as requested by recent letter, the policy itself must be returned prior to release of surrender values.
In case the policy is lost at this time, please complete the Lost Policy Agreement. Upon receipt of either the policy or the form, all values will be released promptly.
This was followed by another letter dated April 9, 1981 addressed to Frank Meier, referring to the communication dated March 27, 1981 and stating, "Please advise us when we may expect to receive a reply to the letter specified above, a copy of which is enclosed." Frank Meier died on April 13, 1981. The policy was never sent to NJL and the lost policy agreement[4] was not executed until October 30, 1981 in connection with the claim for death benefits.
The next question thus presented is whether the policy had been effectively surrendered before the death of Frank Meier. We conclude that it had not. We look first to the language of the policy itself, "This policy may be surrendered for its cash surrender value." Where the insured is given the right under a life insurance policy to surrender the policy and accept its cash surrender value, such right constitutes a continuing offer on the part of the insurance company which, when accepted by the insured, fixes the rights of the parties without further action on the part of the company. See Board of *485 Trustees of Unitarian Ch. v. Nationwide Ins. Co., 88 N.J. Super. at 139; and see Annot., "Insured's exercise of election afforded under life insurance policy as affected by his death before complete consummation of option," 15 A.L.R.3d 1317 (1967). In dictum in the only case in New Jersey on the subject, this court stated: "An essential condition of the exercise of the option was delivery of the policy to Nationwide." Board of Trustees of Unitarian Ch. v. Nationwide Ins. Co., supra, 88 N.J. Super. at 140. While that case does not quote the exact language of the policy, it does say, "The policy provided that upon election to receive the cash surrender value, it had to be returned to the company for surrender." Ibid. The policy under consideration in this case says precisely that.
NJL contends that when it received the "cash surrender form," executed by June Meier on March 26, 1981, the rights of the parties became fixed and the policy was terminated.[5] June Meier and Nordling contend that the surrender did not become effective before Frank Meier's death since the policy itself was not returned to NJL as required by the policy and requested by NJL. NJL counters with the contention, which was accepted by the trial judge, that the return of the policy was not a condition precedent to surrender but only a condition precedent to payment. We disagree.
The circumstances do support NJL's contention that Frank and June Meier intended to terminate the policy in question since a different policy on better terms had been obtained. Premiums were not paid on the August, November and February due dates, probably because of that intention. Had the policy not been lost but rather returned to NJL, the surrender would have been complete and effective before Frank Meier died. However, these circumstances do not support the *486 conclusion, urged by NJL, that the policy was terminated by mutual consent or by replacement. While Frank and June Meier may have intended to terminate the policy, they were thwarted in that intention by the requirement to return the policy or execute the lost policy agreement. Their efforts to find the policy before Frank Meier's death were unsuccessful. There was no mutual consent to terminate the policy.[6] We are also not persuaded by NJL's argument that the policy was terminated by its replacement with another policy from a different company. This principle applies to property insurance but is of doubtful application to life insurance. See Aljax Corp. v. Connecticut Mutual Life Ins. Co., 458 Pa. 57, 333 A.2d 469 (S.Ct. 1975). In any event, in the application for the other policy Frank Meier answered "no" to the question, "Is the insurance applied for intended to replace any insurance or annuity in this or any other company?"
We conclude that the surrender was ineffective because the return of the policy was a condition of surrender. As noted, the policy provides: "This policy may be surrendered for its cash surrender value." Initially, it is the "policy" that may be surrendered to obtain the cash surrender value. The "policy" is the evidence delivered to the insured of the contract of the insurer, and ordinarily, of itself, constitutes complete evidence of the contract. See United Benefit Life Ins. Co. v. McCrory, 414 F.2d 928, 932 (8 Cir.1969), cert. den. 396 U.S. 1039, 90 S.Ct. 687, 24 L.Ed.2d 684 (1970). While it may be argued that the return of the policy is for the benefit of the insurance company and thus may be waived by it, NJL, rather than waive the requirement, insisted upon it. It initially requested *487 return of the policy in its letter of March 13, 1981, followed by its specific statement in the letter of March 27, 1981, "as per contract provisions and as requested by recent letter, the policy itself must be returned prior to release of surrender values," and by its follow-up letter of April 9, 1981.
The trial judge found the language of the policy not dispositive and therefore looked to this correspondence from NJL. In his opinion, the judge did not refer to the provision of the policy, "This policy may be surrendered for its cash surrender value." As noted, he agreed with the position of NJL that surrender of the policy was a condition precedent to payment rather than to surrender. He also agreed that the language of the surrender form (prepared by NJL) "looks like an unequivocal announcement of surrender by June Meier." However, he concluded that the letter of March 13, read with the policy and other correspondence, created an ambiguity "with respect to how the policy owner should convey her acceptance of the continuing offer to surrender." We look to this correspondence rather as confirmation of the explicit language of the policy that the cash surrender value may be had by surrender of "the policy." Alternatively, submission of the cash surrender form by June Meier without returning the policy may also be construed as a counter-offer by her to terminate the policy and receive the cash surrender value without return of the policy. See 15 A.L.R.3d 1317, at 1320, 1324, and Gram v. Mutual Life Ins. Co. of N.Y., 300 N.Y. 375, 386, 91 N.E.2d 307, 313 (Ct.App. 1950). This subsequent correspondence reflects rejection of that counter-proposal by NJL.
We agree with the trial judge that insurance policies are to be strictly construed against the insurer. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305-306 (1965); Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482-483 (1961); Gram v. Mutual Life Ins. Co. of N.Y., 300 N.Y. at 388, 91 N.E.2d at 314. The language of the policy was selected by NJL and must be construed against it. It could have chosen language which *488 would clearly have resulted in termination of the policy upon a request for the cash surrender value without conditioning termination on return of the policy or a "lost policy" agreement. (See, e.g., N.J.S.A. 17B:25-11, concerning the requirement for a provision in a life insurance policy that when payment of benefits "shall become payable by reason of the death of the insured, settlement shall be made upon receipt of due proof of death and, at the insurer's option, surrender of the policy or proof of the interest of the claimant or both."[7]) [Emphasis supplied.] In our opinion a life insurance policy must contain a clear statement as to precisely when the policy terminates in the cash surrender process.
We conclude that the policy had not been effectively surrendered on the date of Frank Meier's death and therefore the beneficiaries June Meier and Nordling became entitled to the face amount of the policy which the trial judge computed as $256,133.05, to which he added pre-judgment interest. NJL further argues that the trial judge erred in awarding pre-judgment interest. Prejudgment interest may run on liquidated claims, not as a matter of right, but rather in accordance with equitable principles. Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 131 (1976). Pre-judgment interest is compensation for loss of the use of money due, not a penalty, Mahoney v. Minsky, 39 N.J. 208, 212 (1963), and is payable from the date that a liquidated obligation becomes due. See Reliable Water Co. v. Monroe Tp. Mun. Util., 146 N.J. Super. 291, 293 (App.Div. 1977). Pre-judgment interest has been awarded where recovery on a life insurance policy was reasonably disputed and ultimately awarded. Karl v. N.J. Life Ins. Co., 139 N.J. Super. 318 (L.Div. 1976), rev'd in part on other *489 grounds 154 N.J. Super. 182 (App.Div. 1977). In spite of the alleged good faith of NJL in its refusal to pay the face amount of the policy and its offer to pay "reduced paid-up insurance" (an amount in excess of the cash surrender value), the beneficiaries were deprived of the money to which they became entitled on the death of Frank Meier. Pre-judgment interest was properly awarded.
The trial judge properly dismissed the claim of plaintiffs June Meier and Nordling for punitive damages. See Garden State Comm. Hosp. v. Watson, 191 N.J. Super. 225 (App.Div. 1982), and Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358 (App.Div. 1983). Similarly, the denial of counsel fees sought by June Meier and Nordling was proper. See Karl v. New York Life Ins. Co., 154 N.J. Super. 182, 183 (App.Div. 1977); Kistler v. N.J. Mfgrs. Ins. Co., 172 N.J. Super. 324, 331 (App.Div. 1980); Miller v. N.J. Ins. Underwriting Ass'n, 188 N.J. Super. 175, 193-194 (App.Div. 1983), cert. den. 94 N.J. 508 (1983).
The judgment under review is affirmed.
BOTTER, P.J.A.D., dissenting.
The premium on the policy in question was due on February 11, 1981. It was not paid, but the policy remained in force during the grace period which ended on March 14, 1981. Prior to March 14, 1981 defendant New Jersey Life Insurance Company (NJ Life) was advised that the owner of the policy, June H. Meier, Trustee (Trustee), intended to surrender the policy. Thereafter, on March 24, a cash surrender form executed by the Trustee was sent to NJ Life. Because of these events NJ Life did not charge the cash surrender value with a loan sufficient to pay the unpaid premium. The first question on this appeal as stated in the majority opinion is whether this conduct by the Trustee constituted a proper written request to revoke the automatic premium loan provision (APL) which would otherwise have kept the policy in force. In my view the *490 Trustee gave adequate notice to NJ Life not to pay the premium that was due by use of the automatic loan provision. NJ Life in fact honored the Trustee's request. Thus, the APL was properly revoked by the conduct of the parties, and the Trustee cannot now claim the face amount of the policy as if the unpaid premium had been timely paid by the loan device.
Originally, there were two NJ Life insurance policies on Mr. Meier's life. A decision was made to replace these policies by less costly ones, and two such policies were obtained, each in the face amount of $250,000, from Executive Life Insurance Co. These policies went into effect on or before August 11, 1980. Thereafter, payment of the premiums on the NJ Life policies was discontinued. However, because of the automatic premium loan provision of the policy in question a loan in excess of $3,000 was charged against the cash value of the policy in order to pay the premium that was due on November 11, 1980 and keep the policy in force. In February 1981 NJ Life advised the Trustee of the loan. This notice apparently stimulated efforts by the Trustee to stop the payment of premiums and claim the remaining surrender value of the policy.
The first notice that the policy was being surrendered was sent to NJ Life on March 9, 1981. NJ Life responded by writing to the Trustee on March 13, 1981 seeking to persuade her to keep the policy in force. However, in accordance with the decision made by interested parties, the Trustee continued with the plan to terminate the insurance. The Trustee signed a form which was sent to NJ Life on March 24, 1981, stating:
I HEREBY REQUEST THAT THE CASH SURRENDER VALUE OF POLICY NUMBER 133624, WHICH WAS ISSUED ON THE LIFE OF Frank Meier, BE PAID TO ME.
I CERTIFY THAT I AM LEGALLY COMPETENT TO EXECUTE THIS INSTRUMENT, THAT THIS CONTRACT IS NOT NOW ASSIGNED TO ANY PERSON OTHER THAN THE UNDERSIGNED, THAT NO PROCEEDINGS IN BANKRUPTCY OR INSOLVENCY INVOLVING THE UNDERSIGNED ARE NOW PENDING.

*491 I DO HEREBY RELEASE, SURRENDER, CANCEL, FULLY DISCHARGE AND TERMINATE SAID CONTRACT
 AT Denville , New Jersey ,
 (CITY)
 THIS 10 DAY OF March , 1981.[1]
In the circumstances of this case NJ Life acted properly in not using the surrender value to pay the premium which was due no later than March 14, 1981. The automatic premium loan provision was requested by a check-mark in a box on the application for insurance. The APL provision could be cancelled in accordance with the terms of the policy as follows:
This provision may be made ineffective at any time upon proper written request made to the Company at its Home Office.
No special form of request for such cancellation was specified in the policy. In my view the APL was effectively cancelled by the communications sent to NJ Life. After the insured's death the Trustee could not rescind the cancellation of the APL status of the policy and attempt to have the premium paid retroactively by a loan charged to the surrender value. The Trustee cannot have it both ways. She had clearly expressed her intention not to have NJ Life pay the premium by the APL device. Although she had not completed the process of obtaining the surrender value, the failure to complete that election should not restore the policy to APL status. At best the Trustee might claim that the policy should have been put on an automatic paid-up insurance basis in accordance with its provisions.[2]
*492 It may be argued that the policy was properly terminated by consent of the parties, although payment of the surrender value had not yet been accomplished. But the issue is not whether the Trustee could rescind her election to terminate the policy because she had not yet returned the policy or a lost policy agreement to NJ Life. The issue is whether the premium due by March 14, 1981 was properly left unpaid in accordance with the Trustee's instructions. In my view NJ Life would have acted improperly if it had charged the February 11, 1981 premium, which was approximately $3,500, against the surrender value of the policy in the face of the Trustee's expressed intentions. Thus, having effectively prevented the payment of that premium by the APL device, the Trustee could not change her position thereafter when the death of the insured made it advantageous to do so.
Respondents contend that the Trustee had no authority to terminate the policy because she had executed a collateral assignment of the policy to Nordling Dean Electric Co. (Nordling). I note that Nordling ratified the Trustee's attempt to surrender the policy and receive the surrender value. Nordling's executive vice-president wrote a letter on April 3, 1981 saying that they were looking for the policies because they had been "replaced" by two Executive Life of New York policies and the NJ Life policies were needed "to complete the surrender." Moreover, the collateral assignment was to provide security for certain possible indebtedness to Nordling. By the terms of the policy such an assignment did not make the collateral assignee an owner of the policy. The policy provided:

*493 A collateral assignee is not an Owner, and a collateral assignment is not a change of ownership as these terms are used in this policy.
The Trustee continued as the owner of the policy, and all the parties recognized her status as owner. Their conduct was consistent with this interpretation.
For these reasons I would reverse the judgment below and enter judgment in favor of defendant contingent on its payment of the paid-up insurance value to the beneficiaries in accordance with its previous tender of that sum.
NOTES
[1] A dispute as to a similar policy involving another firm with which Frank Meier was associated was included in this suit but has been resolved and is not a part of this appeal.
[2] The contention that had Frank Meier not died, NJL would have been accused of acting improperly in applying the APL to payment of the February premium, in face of the information received by it from its agent on March 11 confirmed by ultimate receipt of the surrender form signed by June Meier, is pure speculation, because in fact Frank Meier did die. Moreover, had the surrender been effective by return of the policy, the balance of the unearned premium would have been returned to the policy holder.
[3] The handwriting on the form states that it was executed on March 10, 1981 in Denville, New Jersey, and that June Meier's signature was witnessed by Bruce B. Huber. June Meier does not deny signing this form, rather she professes no recollection. However, both she and Huber dispute that he witnessed her signature. Nevertheless, it has been conceded on the motion for summary judgment that June Meier executed this cash surrender form which was received by NJL on March 26, 1981. We therefore accept this as a fact.
[4] The lost policy agreement requests a description of the circumstances surrounding the loss of the policy and contains a statement, "The undersigned accordingly requests NEW JERSEY LIFE INSURANCE COMPANY to:" followed by four statements with the instructions to check the correct selection. The beneficiaries selected number 3 which reads, "Pay, without production of the original policy, the proceeds due by maturity by reason of death or endowment." Selection number 4 reads, "Pay, without production of the original policy, the proceeds due by surrender." This selection section is followed by an assignment of the policy to the company, an agreement to return the policy if it is later found, and an indemnification to the company, all in consideration of the agreement by the company to pay without production of the policy. These reflect the importance of the policy to the insurance company.
[5] In connection with its claim that the policy in any event was in default, NJL seems to contend that the policy was terminated when it received the March 9, 1981 note from its agent, Sanford Feingold.
[6] An internal memorandum from NJL's manager of policy service to its chairman of the board, dated May 6, 1981, recites that the policy had sufficient value in it to process an APL and that the policyholder requested surrender but "the insured died before surrender was effective." Where two constructions are possible, the construction given clauses of a life policy by the company itself must be considered as very persuasive. Carlson v. Scandia Life Ins. Co., 170 Wis. 342, 174 N.W. 896, 897 (S.Ct. 1919).
[7] With respect to payment of cash surrender value, an insurer is required to reserve the right to defer payment for a period of six months "after demand therefor with surrender of the policy." N.J.S.A. 17B:25-19a(6). [Emphasis supplied.] (The record does not indicate whether this policy contains such a provision.)
[1] It is unlikely that this document was signed on March 10, 1981. It appears to have been back-dated.
[2] The policy provided in part with respect to "PAID-UP INSURANCE":

the insurance will be continued automatically as non-participating Paid-Up life insurance for a reduced amount, payable under the same terms and conditions as apply to this policy. Such Paid-Up life insurance shall be for such level amount as the surrender value of this policy as of the date of premium default will purchase as a net single premium at the attained age, nearest birthday, of the insured.
NJ Life voluntarily gave the beneficiaries the benefit of this provision. The paid-up insurance benefits were several thousand dollars more than the surrender value.